# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1036

_____

Kathy Baker,                              *
                                          *
            Appellant,                    *
                                          *   Appeal from the United States
     v.                                   *   District Court for the
                                          *   Western District of Missouri.
Silver Oak Senior Living Management       *
Co., L.C.; Equi-Management Services,      *
Ltd.,                                     *
                                          *
            Appellees.                    *
_____                  *
                                          *
Equal Employment Opportunity              *
Commission,                               *
                                          *
     Amicus on Behalf of Appellant.       *

_____

Submitted: October 15, 2008
    Filed: September 14, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kathy Baker was terminated from her position as director of an assisted living center operated by Silver Oak Senior Living Management Company, L.C., and Equi-Management Services, Ltd. (collectively, "Silver Oak").  She alleges that she was

terminated because of her age and because she opposed age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §§ 213.010-.137. The district court granted summary judgment in favor of Silver Oak on all of Baker's claims. We conclude that there are genuine issues of fact for trial, and we reverse and remand for further proceedings.

I.

We review the facts in the light most favorable to Baker, the non-moving party. Baker began working for Silver Oak in October 2003. During her tenure, she served as director of an assisted living facility in Nevada, Missouri. On July 15, 2005, at the age of fifty-three, she was terminated by her supervisor, Carolyn Thomas, with the approval of Silver Oak's Chief Executive Officer, Eric Lindsey, and its Vice President, Jennifer Upshaw.

During her employment with Silver Oak, Lindsey held several meetings throughout the year for management personnel, including Baker. During these meetings, Lindsey stressed that Silver Oak should be a "youth oriented company." He stated that "there was no room for dead wood," that Silver Oak was a "young company" that "enjoy[s] hiring energetic people," and that "if you can't keep up, you're going to get left behind." He also remarked that Silver Oak was "missing the boat by not hiring more younger, vibrant people because they would last longer and they would have more energy and be willing to work more hours," and that employees "should start looking over applications better and try to consider hiring younger people."

In May 2004, Baker's supervisor, Christine Woods, gave her a positive performance review, rating her "excellent" in every category and describing her as "dependable," "knowledgeable," and a "leader." A few months later, Thomas

replaced Woods as Baker's immediate supervisor. After taking over, Thomas told Baker that Silver Oak "needed people who were young and vivacious, not slow and old," that Baker "needed to get rid of 'dead wood,'" and that employees who had been fired were "slow and old." She also told Baker to change her appearance because she "dressed like an old lady," and that everyone had to "keep up" with Lindsey and Upshaw, who were both in their early thirties. In addition, Thomas admits that she "teased" Baker about walking slowly and having poor hearing.

Beginning in March 2005, Thomas asked Baker several times to terminate and discipline older employees, but Baker refused to do so. Thomas told Baker that an employee named LaDonna Forsythe was "too old and slow" and "getting old and losing her skills." When Baker refused to fire Forsythe, Thomas told Baker to make life difficult for Forsythe by having her work alone on weekends, in the hope that she would resign. She also said that another employee, Kathy Carr, was "a drain on the facility since she was slow due to her age," and that she was not doing "a very good job due to her age." When Baker refused to fire Kathy Carr, Thomas ordered Baker to discipline Carr for incidents as to which Baker believed Carr was not at fault. During these conversations, Baker "repeatedly told [Thomas] that you cannot get rid of employees just because they are old," and Thomas responded that firing older employees would allow Silver Oak to hire younger employees for less money. Thomas also stated that younger employees "would be better workers, have more energy, be more enthusiastic and stimulate the residents."

On March 21, 2005, soon after refusing Thomas's requests to terminate and discipline older employees, Baker was disciplined and placed on indefinite probation. The disciplinary report, which Thomas issued with the approval of Lindsey and Upshaw, states that Baker failed to get proper approval before admitting a special-needs resident and dismissed an employee without having an administrator present. Baker claims that the disciplinary report was unwarranted, because she did obtain

Thomas's oral approval to admit the resident, and because Thomas specifically told her that she did not want to be present during the termination.

In April 2005, Thomas gave Baker her first negative performance evaluation. Thomas asked her whether she was going to quit, and Baker responded that she was not.

Beginning in June 2005 and continuing for several weeks, Baker was absent from work on approved medical leave. During this time, she visited the Nevada facility on two occasions to update Thomas on her medical condition. During a visit on July 10, 2005, Thomas informed Baker that she was being transferred to a center in Butler, Missouri, and that a thirty-year-old employee would temporarily take over as director of the Nevada facility. Thomas again asked Baker whether she was going to quit, and Baker again responded in the negative. Thomas also asked Baker to call in to work each day for the remainder of her medical leave. Baker says she thought Thomas was joking, because Thomas knew that she would be coming back to work soon, and because Baker told Thomas that she could call her at home if necessary. Baker does not dispute that she failed to call in daily.

On July 15, 2005, Baker was terminated. That day, Thomas called Baker and told her to come into work. When she arrived, Thomas asked Baker to resign her position, and when Baker asked why, Thomas told her that she had failed to call in daily as requested. When Baker refused to resign, Thomas fired her. She then gave Baker an opportunity to sign an "Employee Separation/Exit Record," but Baker refused. The exit record stated as the "explanation of separation" that Baker did not comply with Thomas's request to call in daily while on medical leave.

On August 25, 2005, Silver Oak sent Baker a letter of dismissal as required by Missouri law. *See* Mo. Rev. Stat. § 290.140. The letter listed as the "cause for termination" that Baker failed to "follow [the] chain of command," failed to "follow

-4-

thru [sic] on instructions," and performed poorly at work. When Lindsey was asked during his deposition why Baker was terminated, he gave several reasons, including failing to call in daily, calling other employees and encouraging them to quit, running errands throughout the day contrary to his orders, and having an inconsistent performance record. Thomas was also asked why Baker was terminated, and she responded that Baker "hassled" the staff, tried to get residents to move out, and failed to return calls. When Upshaw was questioned on the same topic, she testified that Baker was fired for not calling Thomas and for "multiple problems" with the resident charts. Additionally, Silver Oak asserts on appeal that Baker was terminated because the Nevada facility, which Baker oversaw, was "lagging behind" the other centers, and because Baker refused to accept a transfer to the Butler facility.

After Baker's termination, thirty-year-old Angela Thomas took over as director of both the Nevada and Butler facilities, until a new director, twenty-two-year-old Starr McGinnis, was hired two or three months later. In September 2005, Baker filed a charge of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"). In June 2006, after receiving a right-to-sue letter from each commission, Baker sued Silver Oak for age discrimination and retaliation under the ADEA and the MHRA.

The district court granted summary judgment in favor of Silver Oak on all claims, and then reaffirmed its ruling in an order denying Baker's motion for reconsideration. With respect to the claim of age discrimination, applying the law then prevailing in federal age discrimination cases, the court concluded that Baker did not present "direct evidence" that age was a motivating factor in her termination. The court also determined that Baker failed to raise a genuine issue for trial about whether Silver Oak's stated reasons for firing her were a pretext for age discrimination. On Baker's claim that she was fired in retaliation for her opposition to age discrimination at Silver Oak, the court held that Baker did not engage in protected activity. Specifically, the court reasoned that up until the time Baker filed her affidavit in

opposition to the motion for summary judgment, she never claimed that she had complained about age discrimination to any supervisors at Silver Oak. The court struck Baker's affidavit on the grounds that it constituted "a sudden revision of her testimony," and was therefore an attempt to create a fact issue "where none existed before." Having concluded that Baker failed to show protected activity, the court found it unnecessary to address the other elements of a retaliation claim.

## II.

We review the district court's decision *de novo*, granting Baker "the benefit of all reasonable inferences from the evidence without resort to speculation." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1126 (8th Cir. 2008). Summary judgment is appropriate if there is no genuine issue of material fact, and Silver Oak is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We first address Baker's claim that she was terminated because of her age in violation of the ADEA. The ADEA makes it unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a). After this case was submitted, the Supreme Court held in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), that "to establish a disparate treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id*. at 2350. There is no "heightened evidentiary requirement" for plaintiffs to satisfy their burden of persuasion through "direct evidence" as opposed to "circumstantial evidence." *Id*. at 2351 n.4. The rule is simply that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id*. at 2351.

The Court in *Gross* made clear that the burden-shifting framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), for cases under Title VII does

not apply to ADEA claims. The Court also observed that it has not "definitively decided" whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), used in Title VII cases is appropriate in the ADEA context. *Gross*, 129 S. Ct. at 2349 n.2. In this case, the record was fully developed in the district court on Silver Oak's motion for summary judgment, with Silver Oak presenting the purported legitimate reasons for Baker's termination, and Baker offering her rebuttal. Therefore, we may turn directly to the question whether Baker has presented sufficient evidence to raise a genuine issue for trial on the ultimate question of age discrimination *vel non*. *See Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006).

We conclude that Baker has presented a submissible case of age discrimination for determination by a jury. Most significant are statements of Lindsey and Thomas, who participated in the decision to terminate Baker, evincing a preference for the employment of younger workers over persons in the class protected by the ADEA. Lindsey's statement to his management team that Silver Oak was "missing the boat by not hiring more younger, vibrant people," and that employees "should start looking over applications better and try to consider hiring younger people" is evidence that a reasonable jury could take to reflect a discriminatory attitude by one who participated in Baker's termination. A jury likewise could find that Thomas's attitude about employment at Silver Oak was biased against older workers, given her directions that Baker should fire certain workers in their 50s and 60s so that Thomas could hire "younger workers" who would be "better workers, have more energy, be more enthusiastic and stimulate the residents."

Other comments by Lindsey and Thomas are open to interpretation, but on a motion for summary judgment, they must be viewed in the context of the foregoing statements. Lindsey's desire to rid the company of "dead wood" could be a legitimate preference to terminate unproductive workers regardless of age, but it could also be a manifestation of a discriminatory attitude against older workers in general.

Thomas's criticism of Baker for dressing "like an old lady," and exhortations to "keep up" with younger executives like Lindsey and Upshaw might be given a benign gloss, but they also could be seen reasonably as further evidence of age-based bias. In light of statements by Lindsey and Thomas that clearly reflect a discriminatory attitude against older workers, statements that might otherwise be dismissed as harmless workplace banter assume greater probative value on a motion for summary judgment.

Other evidence regarding Baker's termination lends further support to her age discrimination claim. In March 2005, shortly after Baker refused directions from Thomas to discipline older workers, Thomas placed her on probation for allegedly failing to obtain approval before admitting a special-needs resident and dismissing an employee without an administrator present. Thomas also stipulated that "further problems" would lead to dismissal, and Lindsey relied on this probationary status as a justification for choosing termination, rather than a lesser sanction, for Baker's alleged transgression in July 2005. Baker testified, however, that the March probationary sanction was unfounded, because she did have approval from Thomas for the admission of the new resident, and because Thomas had authorized Baker to dismiss the employee on her own. If believed, this evidence shows both that Baker did not violate rules of the facility and that Thomas *knew* that she did nothing wrong. In addition, there is evidence that the probationary sanction, leading toward termination, was imposed contrary to the Silver Oak's normal progressive discipline policy, which typically begins with a series of oral and written warnings. And during the same four-month period in which the disciplinary sanctions occurred, Thomas twice asked Baker whether she intended to resign, suggesting that the supervisor was searching for a way to end Baker's employment.

There is also evidence that Silver Oak gave shifting explanations for why Baker was terminated in July 2005. Thomas stated at first that Baker was terminated for failing to comply with Thomas's direction to call the facility daily while Baker was on medical leave. Lindsey, however, added three other reasons for the termination –

that Baker encouraged other employees to quit, disobeyed his orders by leaving the center to run errands throughout the day, and generally performed inconsistently. Thomas also added later that Baker "hassled" staff members and residents to leave the facility. Upshaw gave another reason for Baker's termination, namely, that she was fired because of "multiple problems" with resident charts. Finally, in its brief on appeal, Silver Oak introduced two more grounds for Baker's termination, asserting that she presided over a "lagging" facility and refused to accept the transfer to Butler. Not every supplement to an employer's initial statement of reasons gives rise to an inference of pretext, but substantial variations raise suspicion. *See EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006).

Whether this evidence of pretext would be enough to reach the jury in a run-of-the-mill case, we need not decide. Here, it is combined with evidence from which a jury could find that the management of Silver Oak harbored a discriminatory attitude toward older employees and desired to displace them in favor of a younger workforce. Viewing all of the evidence together, we conclude that Baker has presented a submissible case of age discrimination under the ADEA.

Our conclusion also applies to Baker's age discrimination claim under the MHRA. Like the ADEA, the MHRA prohibits an employer from discriminating against an employee "because of" the employee's age. Mo. Rev. Stat. § 213.055.1(1)(a). In *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. 2007), however, the Supreme Court of Missouri held that the MHRA is less demanding than the ADEA. Under the MHRA, a plaintiff can survive a motion for summary judgment by showing a genuine issue of material fact as to whether "age was a '*contributing factor*' in the [employer's] termination decision." *Id.* at 820 (emphasis added). Because we conclude that there is a genuine issue as to whether age was a "but-for" cause of Baker's termination under the ADEA, it follows that there is likewise a question for trial about whether age was a contributing factor.

III.

Baker's remaining claims are that Silver Oak terminated her because of her opposition to unlawful age discrimination, in violation of the ADEA and the MHRA. The ADEA provides that it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). Similarly, the MHRA makes it unlawful to retaliate against any other person "because such person has opposed any practice prohibited by this chapter." Mo. Rev. Stat. § 213.070(2).

The district court dismissed Baker's retaliation claims on the ground that she never engaged in activity protected by the statutes, that is, that Baker had not "opposed any practice" made unlawful by the ADEA or the MHRA. Although Baker averred in an affidavit that she "repeatedly told [Thomas] that terminating these employees was wrong," and "repeatedly told her that you cannot get rid of employees just because they are old," the district court declined to consider this evidence. The court viewed the affidavit as a "sudden revision" of Baker's deposition testimony and as an "an attempt to create an issue of fact regarding having engaged in protected activity, where none existed before." Relying on *City of St. Joseph v. Southwestern Bell Telephone*, 439 F.3d 468, 475-76 (8th Cir. 2006), the district court struck the affidavit, and granted summary judgment for Silver Oak on the retaliation claims.

On appeal, Baker contends that the district court improperly struck her affidavit. She argues that her statements to Thomas, as recounted in the stricken affidavit, constitute opposition to age discrimination that is protected under the ADEA and the MHRA.

Our decisions in *City of St. Joseph* and *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983), address the district court's authority to strike an affidavit submitted by a party in resistance to a motion for summary judgment. We

-10-

said in *Camfield Tires* that district courts should examine alleged inconsistencies between an affidavit and previous deposition testimony "with extreme care." *Id*. at 1366. The authority to disregard an affidavit and grant summary judgment on the remaining record, we explained, is limited to situations "where the conflicts between the deposition and affidavit raise only sham issues." *Id.*

Applying this standard, we conclude that the district court erred by striking Baker's affidavit. We are not convinced that Baker's affidavit was directly contrary to her previous statements, or that it raised only a "sham issue" concerning protected activity. Rather, Baker was entitled to present evidence by way of affidavit concerning the details of her alleged statements to Thomas in opposition to age discrimination.

Silver Oak contends that Baker's affidavit is directly contrary to testimony in her deposition about conversations with Thomas. Near the end of her deposition, Baker was questioned whether she had been given the chance to explain "all the reasons" why she thought she was "terminated based on age." One question later, she was asked whether she "ever complain[ed] to Ms. Thomas about age discrimination," and she responded "no." Viewing this testimony in context, however, a reasonable factfinder need not conclude that Baker's affidavit is directly contrary to her deposition. The deposition question about complaints to Thomas came immediately after an inquiry about why Baker thought *she* was terminated based on age. It would have been reasonable for a deponent to understand the question about complaints to Thomas to ask whether Baker had complained to Thomas that Baker herself had been terminated based on age. Baker's affidavit, by contrast, asserted that Baker had complained to Thomas about instructions that Baker should terminate *other employees* at Silver Oak. The two pieces of evidence do not present the sort of direct contradiction that is necessary to justify striking part of the plaintiff's evidentiary submission on the ground that it presents a "sham issue."

Elsewhere in her deposition, Baker testified that she never made allegations about age discrimination to the human resources department at Silver Oak, never submitted a written complaint to Silver Oak, and never complained about age discrimination to Lindsey, Upshaw, or the director of human resources. None of these questions, however, asked about Baker's oral communications with Thomas, and Baker had no obligation in her deposition to volunteer information that was not requested. *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999).

Silver Oak also points out that Baker was asked in an interrogatory to state all of the evidence supporting any allegation in her complaint, and that Baker responded by incorporating her Rule 26 disclosures and her charge of discrimination with the EEOC and the MCHR. In her charge with the EEOC and the MCHR, Baker stated that she refused Thomas's requests to fire older workers, and that "Thomas ordered [her], over [her] objections, to write up a disciplinary report on Carr . . . for incidents for which Carr was not at fault." The interrogatory answer did not set forth the specific statements to Thomas that were recounted later in Baker's affidavit, but we have never held that the failure to include specific details of all communications in an interrogatory answer precludes a plaintiff from supplementing her submission in a subsequent deposition or affidavit. The omission of detailed information from an interrogatory response can be a proper basis for impeachment, but it does not trigger the narrow authority established in *Camfield Tires* to disregard entirely a portion of the plaintiff's evidence.

We therefore conclude that the district court erred by striking Baker's affidavit. Considering the affidavit, there is sufficient evidence for a jury to find that Baker engaged in protected activity under the ADEA and the MHRA before she was terminated. By protesting to Thomas that it was wrong to terminate older employees, and that Silver Oak could not discharge employees "just because they are old," Thomas clearly opposed conduct that she reasonably believed to be unlawful age discrimination. *See Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir.

-12-

1995).  Accordingly, the district court erred by dismissing Baker's retaliation claims on the ground that Baker did not engage in protected activity under the statutes.[*]

*        *        *

For these reasons, we reverse the decision of the district court and remand for further proceedings.

_____

[*]Because we conclude that the district court erred in striking the affidavit, we need not decide whether Baker's refusal to comply with Thomas's requests to terminate older employees, in and of itself, constituted protected opposition under the ADEA or the MHRA.  *Cf. Crawford v. Metro. Gov't*, 129 S. Ct. 846, 851 (2009) (suggesting that "standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons" would qualify as protected "opposition" under Title VII).