# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2713
_____

David Buehrle

*Plaintiff - Appellant*

v.

City of O'Fallon, Missouri, A Municipal Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 14, 2012
Filed: September 13, 2012

_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

David Buehrle brought suit against his employer, the City of O'Fallon, Missouri (the City), alleging the City retaliated against him for exercising his right to free speech guaranteed by the United States and Missouri Constitutions; discriminated against Buehrle on the basis of age by failing to promote him, in violation of the Missouri Human Rights Act (MHRA) found in chapter 213 of the Missouri Revised Statutes and in violation of the Age Discrimination in Employment Act (ADEA)

found at 29 U.S.C. §§ 621—634; and retaliated against Buehrle for exercising his rights under the Missouri Workers' Compensation Act, in violation of Mo. Rev. Stat. § 287.780. The district court[1] granted summary judgment in favor of the City. We affirm.

I.

"We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Martin v. E-Z Mart Stores, Inc., 464 F.3d 827, 829 (8th Cir. 2006) (internal citation omitted). Viewing the evidence in the light most favorable to Buehrle, the facts are as follows.

Buehrle worked for the police department from 1988 to 1996 as a patrol officer, undercover narcotic agent, and detective. In 1996, Buehrle resigned his position with the City to begin work for the Department of Justice as a special agent for the Immigration Department. In 1999, Buehrle was rehired by the City as a police officer and was promoted to sergeant in 2000. Buehrle served as sergeant until 2001, when he resigned from the department to work as a youth pastor. In 2003, Buehrle was again hired as a police officer. In 2005, at the request of the Mayor of the City, Buehrle was assigned to conduct a number of special investigations into questions of corruption and wrongful acts by other City officials and employees at City Hall. The City Administrator, Bob Lowery, asked Buehrle to make a report of his findings to the City's Board of Alderman at a closed session. Lowery told Buehrle to make suggestions on how to change procedures to prevent future misuse of City property. In this presentation, Buehrle read verbatim from a report of his findings, which

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

included Buehrle's recommendations for procedural changes, comments about corruption among local leaders, and Buehrle's opinions and conclusions about the corruption. Buehrle also made comments about the placement and safety of a 9-11 memorial. Buehrle's position as special investigator concluded in 2006, and Buehrle returned to the police department as a patrol officer.

Buehrle's report angered Lowery. In 2007, Lowery hired William Siebert for the position of Major within the police department. In 2008, Seibert was given the responsibility of investigating a complaint that Buehrle lied under oath. This Internal Affairs investigation involved testimony given by Buehrle in federal court in January of 2008, in which Buehrle testified he had not been disciplined as a result of a 1992 Internal Affairs investigation against him. The 1992 investigation-report was missing from city files, but an officer searched the basement of the police department building and found a Personnel Action Form that stated Buehrle had been given his choice of five days of suspension or loss of 40 hours of compensatory time as a result of the 1992 investigation. Though Seibert could not verify the source or authenticity of the form, Buehrle explained that the sanction had been held in abeyance, and Seibert verified that Buehrle did not lose compensatory time as a result of the investigation, Seibert relied on the form and recommended that Buehrle be terminated for lying under oath. Instead, the City issued Buehrle a written reprimand for giving testimony that "could be construed as less than accurate." Lowery later promoted Seibert to interim chief.

Also in 2007, Buehrle ruptured his Achilles tendon while Buehrle was on duty and chasing a suspect. While Buehrle was on crutches following his Achilles tendon surgery, he developed an injury to his elbow for which he received workers' compensation benefits. During his recovery from the tendon injury, Buehrle went on light duty. Buehrle's light duty shift was the day shift; however, when Buehrle returned from light duty, he was assigned the afternoon shift. The afternoon shift is

considered less desirable than the day shift, and Buehrle was assigned to the afternoon shift for three years in a row.

In 2008, the City changed the light duty policy and limited light duty to three people. The policy distinguished between those who were injured on the job and those who were not. As a result of this policy, Buehrle was denied light duty twice in July 2008. The City did not follow its own policy in how it counted the number of people on light duty or in how it treated Buehrle's injury.

During the time that Buehrle was recovering from his injuries and following Buehrle's report to the Board of Alderman, Buehrle began seeking a promotion. Lowery had advised the chief of police that Lowery would likely not approve any promotion of Buehrle because Lowery did not trust Buehrle and believed Buehrle was motivated by self-interest. In 2007, although Buehrle applied to be promoted to sergeant and finished first in the sergeant promotion process, he was not promoted. The promotion process allowed the chief of police to promote one of the top three candidates. The second-ranked candidate, who was younger than Buehrle and whom Buehrle had trained, received the promotion. In 2008, Buehrle twice requested to be transferred to the detective unit, but his requests were rejected, even though Buehrle was the first choice of the lieutenant in charge of the detective bureau. Instead of Buehrle, a younger officer was transferred. In 2009, Buehrle again applied to be promoted to sergeant and was ranked highest on the list of applicants. Again, a younger applicant was promoted instead of Buehrle.

In the midst of Buehrle's promotion process, in 2008, a sergeant notified Chief Seibert that a citizen complaint involving Buehrle was forthcoming. Seibert investigated the arrest underlying the complaint and determined that Buehrle did nothing wrong. During the course of the investigation, Buehrle sent Seibert an email accusing Seibert of jumping to conclusions without first consulting Buehrle about his

-4-

side of the story. However, Seibert reviewed and approved evaluations of Buehrle that said Buehrle had excellent judgment skills and did not jump to conclusions.

While this lawsuit was pending, Buehrle participated in a promotion process and received a promotion to sergeant.

## II.

In response to these events, Buehrle filed suit in a Missouri state court, alleging a single count of retaliation in violation of Missouri Revised Statute section 287.780, which is part of the Missouri's Workers' Compensation Act. Buehrle then amended his complaint, adding claims of retaliation in violation of the free speech right guaranteed by the United States and Missouri Constitutions and adding claims for age discrimination in violation of the MHRA and the ADEA. Buehrle's free speech claim alleged the City retaliated against Buehrle for the comments made in his report to the Board of Alderman by failing to promote Buehrle, by failing to follow internal procedures while investigating him, and by taking negative personnel actions against him. Buehrle's ADEA and MHRA claims alleged that the City failed to promote Buehrle because of his age.

After Buehrle amended his complaint to include federal claims, the City removed the case to federal court. See 28 U.S.C. §§ 1367, 1441. The district court subsequently granted the City's motion for summary judgment, holding Buehrle's free speech claims were without merit because Buehrle did not speak as a citizen when making his report to the Board of Alderman. The court found Buehrle's ADEA and MHRA claims to be without merit because Buehrle could not show the City's proffered reasons for failing to promote Buehrle were pretextual.[2] The court granted

---

[2]The court also found that the statute of limitations barred Buehrle's discrimination claims as to the 2007 promotion process. Buehrle does not contest this ruling on appeal.

summary judgment on Buehrle's Workers' Compensation Act retaliation claim because Buehrle could not demonstrate that Buehrle's exercising his rights under the statute was the sole reason that he was not promoted.

Buehrle appeals the grant of summary judgment on each of his claims. We will address each claim in turn.

### III.

Buehrle addresses his state and federal free speech claims simultaneously, using the same cases to support both claims. "Missouri courts have found the federal and state constitutional rights to free speech . . . are similar . . . ." Strinni v. Mehlville Fire Prot. Dist., 681 F. Supp. 2d 1052, 1078 (E.D. Mo. 2010). Accordingly, for purposes of this appeal, this court will assume, without deciding, that the contours of the state constitutional freedom of speech are the same as those of the federally protected freedom of speech. Id.

"To decide whether a public employee's speech is protected by the First Amendment, a court must first determine 'whether the employee spoke as a citizen on a matter of public concern.'" McGee v. Pub. Water Supply, Dist. #2, 471 F.3d 918, 920 (8th Cir. 2006) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). "This is a question of law for the court." Id. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421. "On the other hand, when a government employee speaks 'as a citizen'—that is, outside the scope of employment—on 'matters of public concern,' the First Amendment offers protection" unless the government entity had an "'adequate justification for treating the employee differently from any other member of the general public.'" McGee, 471 F.3d at 920 & n.2 (citation omitted).

In Garcetti, the plaintiff, who was a calendar deputy in a district attorney's office, alleged he was retaliated against after writing a memorandum to his supervisor asserting that an affidavit filed in a case contained inaccuracies. 547 U.S. at 414-15. The Supreme Court noted the fact that the plaintiff expressed his views inside his office rather than publicly was nondispositive of the case, as was the fact that the memo concerned the subject matter of the plaintiff's employment. Garcetti, 547 U.S. at 420-21. The Court stated "[t]he controlling factor" in the case was that the "expressions were made pursuant" to the plaintiff's official duties. Id. at 421.

As did the plaintiff in Garcetti, Buehrle spoke pursuant to his official duties. Buehrle was assigned as a special investigator at City Hall, reporting directly to the Mayor. City Administrator Lowery asked Buehrle to report to the Board of Alderman on "all the information he learned during his investigation." He was specifically told to give conclusions about possible changes that could prevent the misuse of city property. The speech that Buehrle contends prompted the City's retaliation was his report, delivered orally, to the Board of Alderman. Because Buehrle's "expressions were made pursuant" to his official duties, they are not insulated by the First Amendment from discipline. See Garcetti, 547 U.S. at 421.

> The significant point is that the [speech was delivered] pursuant to [Buehrle's] official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

Id. at 421-22. For these reasons, the district court did not err in granting summary judgment in favor of the City on Buehrle's free speech claims.

IV.

Moving next to Buehrle's ADEA and MHRA age discrimination claims, we note that "[l]ike the ADEA, the MHRA prohibits an employer from discriminating against an employee 'because of' the employee's age." Baker v. Silver Oak Senior Living Mgmt. Co., 581 F.3d 684, 689 (8th Cir. 2012) (citing Mo. Rev. Stat. § 213.055(1)(a)). In Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007) (en banc), the Missouri Supreme Court recognized that under the MHRA, "if consideration of age . . . *contributed* to the unfair treatment, that is sufficient" to prove the claim of age discrimination. Id. at 819. Thus, the MHRA employs a more lenient standard than the ADEA in determining whether an employee has been discriminated against. See Baker, 581 F.3d at 689-90.

To survive summary judgment on the MHRA claim, Buehrle must demonstrate that age was a "contributing factor" in the decision to promote others instead of him. "A contributing factor has been defined as one that contributed a share in anything or has a part in producing the effect." Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (quotation omitted). "A claim of discrimination under the MHRA will survive a motion for summary judgment if there is a genuine issue of material fact as to whether [the plaintiff's . . . age] was a 'contributing factor' in [his] [e]mployer's termination decision." Marez v. Saint-Gobain Containers, Inc., 740 F. Supp. 2d 1057, 1068 (E.D. Mo. 2010) (quotation omitted).

Buehrle claims that he was subjected to age discrimination when in 2009 a younger candidate with less experience was hired for a sergeant position instead of Buehrle. Buehrle has failed to present any facts that demonstrate that age was a factor in the consideration of the 2009 hiring. Indeed, the undisputed facts show that then-Acting Police Chief Seibert first offered the 2009 sergeant position to a candidate who, like Buehrle, was also over 40 years of age. Only after that candidate turned down the promotion did Seibert offer the position to the candidate who was 32 years

old.  Absent any showing that age of the applicants factored into Seibert's decision, Buehrle has failed to meet his burden under the MHRA, and summary judgment was properly granted on this claim.

With Buehrle's failure to meet the MHRA's more lenient standard for showing age discrimination, we likewise affirm the district court's grant of summary judgment on the ADEA claim.  Under the ADEA standard, a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action."  Gross v. FBL Fin. Serv., Inc., 557 U.S. 167, 177 (2009).  If Buehrle cannot meet the contributing factor test of the MHRA, it stands to reason that he cannot meet the ADEA's but-for test.  The district court properly granted summary judgment on the ADEA claim.

V.

Last, we move to Buehrle's claim under the Missouri Workers' Compensation Act.  Under Missouri law, no employer may discharge an employee for exercising any right under the Missouri Workers' Compensation Act.  See Mo. Rev. Stat. § 287.780. To establish a claim of retaliatory discharge, Buehrle must prove: (1) he was employed by the City prior to his injury, (2) he filed a workers' compensation claim, (3) the City discriminated against him, and (4) the exclusive cause of the discrimination was Buehrle's action of filing the claim.  Crabtree v. Bugby, 967 S.W.2d 66, 70 (Mo. 1998) (en banc).  At issue in this appeal is the fourth requirement—whether Buehrle was not promoted to sergeant and detective positions exclusively because he filed a workers' compensation claim.

The district court found that Buehrle admitted that he was not promoted because of the statements he made to the City Council which Buehrle contends were protected by the First Amendment.  In this appeal, Buehrle argues that his admission merely constitutes an alternative theory of recovery and that a jury could still determine that

the exclusive cause of the adverse employment actions was his filing the workers' compensation claim.

We reject Buehrle's attempt to characterize his admission as an alternative theory of recovery. Instead, Buehrle has conceded factually that the reason for the adverse employment actions was not exclusively, if at all, his filing of a workers' compensation claim. This admission is fatal to his retaliation claim under the Missouri Workers' Compensation Act, and summary judgment was properly entered.

## VI.

We affirm the district court's grant of summary judgment in favor of the City.

_____