# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1831
_____

Daniel J. Gardner

*Petitioner - Appellant*

v.

Wal-Mart Stores, Inc.; Wal-Mart Stores East, LP; Wal-Mart Transportation, LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 14, 2021
Filed: June 23, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Daniel J. Gardner sued his former employer, Wal-Mart Stores, Inc., for age discrimination under the Iowa Civil Rights Act (ICRA). The district court[1] granted summary judgment to Walmart. *Gardner v. Walmart Stores, Inc.*, No. 4-18-cv-450,

_____

[1]The Honorable Charles R. Wolle, District Judge for the Southern District of Iowa.

Docket No. 55, at 4 (S.D. Iowa Mar. 23, 2020). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Gardner worked for Walmart from 1993 until February 2017. He served as a private fleet safety manager in Mount Pleasant, Iowa, responsible for implementing Walmart's safety program.

In January 2016, Gardner disclosed an employee's medical condition during a training session. Walmart placed him on a "Third Written"—meaning he could be fired if disciplined again. One of Gardner's job responsibilities was enforcing Walmart's Hazardous Materials Endorsement (HME) policy. It required him to "identify all current and new hire drivers without a valid hazmat endorsement and notify the local Transportation Operations Managers." In January 2017, Gardner violated the policy. As acknowledged in his statement of undisputed material facts, a driver failed to get an HME after the 90-day deadline, but Gardner did not notify Operations that the driver continued working. Instead, after about 30 more days, he suspended the driver.

In February 2017, Walmart gave Gardner the option to resign or be dismissed. He resigned. He then sued, alleging he was fired because of age (58). The district court granted summary judgment to Walmart, ruling he could not show that its proffered reason for the firing was a pretext for age discrimination.

This court reviews de novo a grant of summary judgment, viewing the facts most favorably to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Iowa discrimination law governs this diversity action. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 450 (8th Cir. 2010). *See also Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 7 (Iowa 2009) ("When interpreting discrimination claims under Iowa Code chapter 216, we turn to federal law, including Title VII of the United States Civil Rights Act . . . .").

-2-

II.

ICRA prohibits age discrimination in the workplace. **Iowa Code § 216.6(1)(a)**. Although Gardner did not present direct evidence of discrimination, he claims to satisfy the *McDonnell Douglas* burden-shifting framework. *See Hedlund v. Iowa*, 930 N.W.2d 707, 719-20 (Iowa 2019) (collecting Iowa cases applying *McDonnell Douglas* to discrimination claims), *citing* **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802 (1973).[2]

Like the district court, this court assumes that Gardner met his prima facie burden.[3] Gardner acknowledges that Walmart offered a legitimate, non-

---

[2]The standard for ICRA claims, at summary judgment, is unsettled in the Iowa courts. *Hedlund*, 930 N.W.2d at 726-27 (Appel, J., concurring in part and dissenting in part) (arguing that a "motivating factor" test should be applied at summary judgment), *discussing* **Price Waterhouse v. Hopkins**, 490 U.S. 228, 232 (1989) (plurality opinion), *superseded partly by statute*, **Civil Rights Act of 1991**, 42 U.S.C §§ 2000e-2(m), 2000e-5(g)(2)(B). Because Gardner's claims fail under either test, this court need not address this issue. *See id.* at 719 (opinion of the court) (declining to determine which test applies).

[3]The parties dispute the required showing for his prima facie case. *See Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 n.4 (8th Cir. 2010) (noting some "tension in our circuit's jurisprudence regarding whether a court may consider an employer's reasons for discharging an employee when considering the qualified element of the prima facie case") (applying Iowa law); *Garang v. Smithfield Farmland Corp.*, 439 F. Supp. 3d 1073, 1085-86 (N.D. Iowa 2020) (addressing the "performing work satisfactorily" vs "otherwise qualified" debate) (applying Iowa law). *Compare* **Johnson v. Mental Health Inst.**, 912 N.W.2d 855, *6 (Iowa Ct. App. 2018) (unpublished table order) (requiring plaintiff to show she performed her work "satisfactorily"), *with* **Falczynski v. Amoco Oil Co.**, 533 N.W.2d 226, 232 (Iowa 1995) (plaintiff's excessive absences meant she could not perform "essential functions of her job," rendering her unqualified), *and* **Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n**, 322 N.W.2d 293, 296 (Iowa 1982) (requiring plaintiff

discriminatory reason to fire him—the violation of the HME policy while on a Third Written. *See **Torgerson***, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." (internal citation and quotation marks omitted)).

Gardner believes there is a genuine issue of material fact whether the reason Walmart offered is a pretext for age discrimination. "The showing of pretext necessary to survive summary judgment requires more than merely discrediting the employer's proffered reason for the adverse employment decision." ***Grutz v. U.S. Bank Nat. Ass'n***, 695 N.W.2d 505, *3 (Iowa Ct. App. 2005) (unpublished table order) (cleaned up). "The plaintiff's age must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." ***Id.***, *quoting **Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 141 (2000) (cleaned up).

A plaintiff may demonstrate a "material question of fact regarding pretext" in at least two ways. ***Torgerson***, 643 F.3d at 1047, *quoted approvingly by **Wyngarden v. Iowa Judicial Branch***, 856 N.W.2d 2, *12-13 (Iowa Ct. App. 2014) (unpublished table order). The "plaintiff show[s] that the employer's explanation is unworthy of credence . . . because it has no basis in fact." ***Id.*** Or the plaintiff "persuad[es] the court that a prohibited reason more likely motivated the employer." ***Id.*** "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." ***Harvey v. Anheuser-Busch, Inc.***, 38 F.3d 968, 973 (8th Cir. 1994), *quoting **Elrod v. Sears, Roebuck & Co.***, 939 F.2d 1466, 1470 (11th Cir. 1991).

---

to show "he was qualified for the job"). Because this court may assume Gardner met his prima facie burden, this court need not address what Iowa law requires.

Gardner insists that Walmart's explanation for firing him is "unworthy of credence." *See **Ridout v. JBS USA LLC***, 716 F.3d 1079, 1086 (8th Cir. 2013) (applying Iowa law). He says he complied with the HME policy when he notified Operations *before* the 90-day deadline that the driver did not have an HME. But this does not excuse his failure to comply *after* it expired. *Cf. **Baker v. Silver Oak Senior Living Mgmt. Co.***, 581 F.3d 684, 689 (8th Cir. 2009) (evidence that employee did not violate work policy supported discrimination claim).

Next, Gardner argues at length that age was the reason for his firing. First, he argues that his former supervisor, Jennifer A. Gray, made disparaging comments about older employees, saying "You old guys have been around too long and need to get up with new technologies." He did not present this as "direct evidence" of discrimination in the district court, like he does on appeal. *Gardner*, No. 4-18-cv-450, Docket No. 55, at 3. This court generally does "not consider arguments raised for the first time on appeal." *See **Murphy v. Aurora Loan Servs., LLC***, 699 F.3d 1027, 1033 n.4 (8th Cir. 2012). *Cf. **Roberts v. Park Nicollet Health Servs.***, 528 F.3d 1123, 1128 (8th Cir. 2008) (noting that discriminatory comments by a decisionmaker constituted direct evidence, but adding "[a]lthough Roberts elected not to argue the case on a direct evidence theory, [the decisionmaker's] alleged statements also provide an independent basis" for pretext).

Discriminatory comments by decisionmakers, however, can be used to show pretext under *McDonnell Douglas*. ***Watkins v. City of Des Moines***, 949 N.W.2d 28, *6-7 (Iowa Ct. App. 2020) (unpublished table order). Gray was "involved" in Gardner's firing. *See **id.*** at *6 (discriminatory comments must be made by someone "involved" in the employment decision). She provided information to Michael Noble (the director of fleet safety) about Gardner's work performance from when they worked together. But Gardner did not produce any evidence that she approved the firing, recommended it, or knew about it in advance. *Cf. **Thomas v. Heartland Emp. Servs. LLC***, 797 F.3d 527, 530 (8th Cir. 2015) (indirect supervisor was a decisionmaker because he, along with others, *decided* to fire the employee). In fact, Gray was no longer his supervisor when he was fired. *See **Grutz***, 695 N.W.2d at *3.

Gardner has not shown that the decisionmakers—Noble and his supervisor when the violation occurred—made any discriminatory comments about age.

Gray's comments are also too remote in time to support an inference of discrimination.  *See Hedlund*, 930 N.W.2d at 721-22.  Gardner provides no specific dates for the remarks, but Gray was not his boss as of December 2016.  Walmart did not learn of the HME violation until February 2017.  The remarks, at the latest, came about three months before Gardner's firing.  This is insufficient to show pretext.  *Id.* at 722, *citing Ortiz-Rivera v. Astra Zeneca LP*, 363 Fed. Appx. 45, 48 (1st Cir. 2010) ("[M]ere generalized 'stray remarks' . . . normally are not probative of pretext absent some discernable evidentiary basis for assessing their temporal and contextual relevance." (alterations in original)).

At most, Gray's "comment[s] only suggest[] that [she] could have harbored discriminatory feelings toward older employees in general."  *See Hammer v. Ashcroft*, 383 F.3d 722, 727 (8th Cir. 2004) (alterations added).  But this evidence "does not directly deal with the ultimate question:  whether [Gardner] was discriminated against on account of age" when Walmart fired him.  *Id.*

Second, Gardner says Walmart's "shifting explanations" for his termination show pretext.  *See EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006).  "Not every supplement to an employer's initial statement of reasons gives rise to an inference of pretext, but substantial variations raise suspicion."  *Baker*, 581 F.3d at 689.  "A plaintiff must do more than identify discrepancies or inconsistences in an employer's rationale for terminating the plaintiff to prove that the employer gave shifting explanations."  *Fatemi v. White*, 775 F.3d 1022, 1048 (8th Cir. 2015).  The change in explanation must be substantial.  *Id.*  If the employer provides "two completely different explanations," there is evidence of pretext.  *Trans States*, 462 F.3d at 995 (collecting cases).

Here, Walmart has consistently explained that Gardner was terminated for violating the HME policy, while on a Third Written.  *See Sieden v. Chipotle*

*Mexican Grill, Inc.*, 846 F.3d 1013, 1018 (8th Cir. 2017) (no pretext where employer merely "elaborated on" its consistent explanation). While Walmart referenced some previous infractions throughout litigation, "the nature of the explanation has not changed." *See id.* "A plaintiff claiming shifting explanations to support pretext must show that the reasons are completely different, not minor discrepancies." *Id.* *Cf. Baker*, 581 F.3d at 689 (declining to decide whether supplemental justifications alone raised an inference of pretext because they were combined with other evidence of discrimination).

Third, Gardner emphasizes his positive performance history. "[A]lthough a history of positive performance evaluations can be powerful evidence of satisfactory performance, employers may choose to rely on recent performance more heavily than past performance." *Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012) (cleaned up). *Cf. Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000) (recent poor performance evaluation had less weight because employee had a history of "very positive" evaluations); *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 612 (8th Cir. 1997) (employee's "outstanding performance record," combined with other evidence, demonstrated pretext). But Gardner's performance history was not exclusively positive. Before his termination, he had multiple infractions, including: a "critical fail" on a safety audit, disclosing confidential employee medical information, failing to call-in for his mid-year evaluation, discussing personnel information with an employee's spouse, and ignoring training materials. He also points to a state-association award for safety manager of the year (which he requested a state-board member to nominate him for). Though the HME violation occurred after some positive evaluations and the award, Walmart was "entitled to rely" on the later infraction, "rather than solely the performance evaluation[s]." *See Twiggs*, 679 F.3d at 994.

Fourth, Gardner argues that other employees made the same error and were not disciplined. "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). "[I]ndividuals used for comparison must

-7-

have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc), *quoting Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (alteration in original).

Gardner identifies only one other safety manager who violated the policy. *Cf. Ridout*, 716 F.3d at 1084 (employee was singled out for discipline for behavior that was *common* amongst other employees). He also identifies a general transportation manager who violated the policy. Gardner has not shown: (1) they had a similar disciplinary history (i.e., a Third Written); (2) their immediate superiors knew of the violation and declined to discipline them; or (3) they were in the same chain of command. *See Clark*, 218 F.3d at 918.

Finally, Gardner alleges a pattern of firing older workers at Walmart. Viewed favorably to him, nine of the 10 safety managers fired from 2016 to 2018 were over 40, and Noble was involved in all of them. Gardner provides no further context for these general statements about a pattern (e.g., the overall age demographic of safety managers at Walmart, the ages of the other replacement workers). These statements alone do not support an inference of discrimination. *See MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1058 (8th Cir. 1988) ("MacDissi provides independent, direct grounds for disbelieving Valmont's explanation for his layoff, and so his quantitative evidence does not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides a statistical pattern."); *Thomas v. Caldera*, 221 F.3d 1344, *1 (8th Cir. 2000) (per curiam) (unpublished table order) (generalized statements and statistical evidence without context were insufficient to show pretext).

Gardner stresses the *Ridout* case, claiming "[a] reasonable inference of a discriminatory pattern may . . . be drawn from evidence that nearly all the terminated employees were over forty." *Ridout*, 716 F.3d at 1086. To the contrary, the *Ridout* case recognizes, "It is difficult to weigh the probative value" of statistics without

knowing how many unterminated employees were over 40.  ***Id.***  In *Ridout*, there was more evidence of discrimination than here.  First, unlike Gardner, the plaintiff demonstrated "that younger employees were treated more leniently when they committed infractions of comparable seriousness." *Id.* at 1084.  The plaintiff's post was filled by two successive employees—one who was *demoted* for poor performance, and one who was *rehired after* a racist incident.  ***Id.***  Second, unlike Gardner, the plaintiff "had never been counseled or warned about any declining performance prior to his termination."  ***Id.***  Third, unlike Gardner, the plaintiff demonstrated he was disciplined for a behavior—swearing loudly—that *regularly* went undisciplined.  ***Id.***

Gardner's evidence is insufficient to allow a reasonable juror to find that Walmart's proffered reason for firing him was pretextual.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____